**NOT FOR PUBLICATION**

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re:  TIMOTHY NEIL JONES, SR.,<br>            Debtor. | Case No. 12-30654-DOT<br>Chapter 13 |
| TIMOTHY NEIL JONES, SR.,<br>            Plaintiff, | |
| v. | Adv. Pro. No. 12-03049-DOT |
| TRI-CITY AUTO SALES,<br>            Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Trial was held November 15, 2012, on the complaint filed by debtor seeking turnover of a vehicle and damages against defendant Tri-City Auto Sales for an alleged violation of the automatic stay of the Bankruptcy Code. This case is troubling on multiple levels. A brief recitation of the facts is necessary before the court considers debtor's complaint.

Debtor has filed multiple bankruptcy cases in this court. The court's records reveal that the bankruptcy case associated with the complaint presently before the court is debtor's fifth bankruptcy case. The other four prior cases were unsuccessful chapter 13 cases, three of which were dismissed on debtor's own motion. The fourth case was dismissed with prejudice to debtor's right to file another bankruptcy case for a period of 180 days. All four of the previous cases were terminated in 2005 or before.

1

Debtor filed this chapter 13 case on February 3, 2012. Prior to the filing of the case, Tri-City had repossessed debtor's motor vehicle, in which it had a security interest. The parties do not dispute that the security interest was valid and properly perfected. Upon filing of the bankruptcy, debtor's counsel contacted Tri-City and requested turnover of the vehicle. Tri-City refused the request and sought the assistance of counsel. From the date of the filing of the petition until March 5, 2012, neither party filed papers with the court requesting a resolution of the turnover issue. On March 5, 2012, debtor filed a chapter 13 plan and also filed the complaint initiating this turnover action. Debtor requested an expedited hearing on the turnover issue, which request the court granted. On March 7, 2012, the date for the expedited hearing, the parties settled the turnover issue, leaving for a later date the issue of whether there had been a willful violation of the automatic stay and what damages arose therefrom.

On May 30, 2012, the court issued a pre-trial order, in which it set out deadlines for the disclosures required by the Federal Rules of Civil Procedure. The order scheduled trial for November 15, 2012. Neither party complied with the pre-trial order's deadlines. Counsel for debtor represented to the court that she had failed to comply with the deadlines because she was anticipating a continuance and a new pre-trial order setting new deadlines. Counsel for Tri-City represented to the court that it had not made any pre-trial disclosures in light of plaintiff's failure to make the required disclosures,

assuming therefore that the matter had been abandoned.[1] Counsel for Tri-City also represented that at no time had it consented to a continuance of the matter or led debtor or his counsel to think a continuance would be consented to.

Counsel for debtor filed a motion to continue the November 15, 2012, trial date and requested an expedited hearing on that motion. The motion to expedite was granted; the motion was heard on November 14, 2012, and was denied.

Trial was held on November 15, 2012. On the eve of trial, debtor's counsel tardily filed the disclosures required by the pre-trial order, including the filing of a witness list and a list of exhibits. No disclosures were filed on behalf of Tri-City. At trial, Tri-City objected to the admission of any evidence on behalf of debtor, pointing out that debtor had not complied with the disclosures required by the pre-trial order and had not timely filed witness or exhibit lists. The court allowed counsel for debtor to present the testimony of debtor, finding it to be nonprejudicial, as Tri-City should have anticipated that debtor would be called as a witness and should have prepared accordingly. The court also admitted into evidence the sales contract for the vehicle. Tri-City presented testimony from its owner, Mohammad

---

[1] Original counsel for Tri-City filed a motion to withdraw on August 20, 2012, which motion was granted on August 23, 2012. The basis of the motion was that Tri-City had terminated counsel's services. On October 25, 2012, Kevin J. Funk of DurretteCrump entered a notice of appearance as counsel for Tri-City.

Mohammad. In making its determination, the court relies solely on the testimony of debtor and Mr. Mohammad.

Trial testimony revealed the following additional facts. When the vehicle was returned to debtor pursuant to the March 7, 2012, settlement, it had one flat tire, and three others went flat shortly thereafter. There were also items missing from the vehicle, including textbooks valued at $1,000.00, CDs, and debtor's work uniforms. Tri-City had held the vehicle in storage at a remote facility.

The consequences to debtor for Tri-City's failure to turn over the vehicle were severe. Debtor had operated a house and office cleaning business, which he was unable to operate without a vehicle, and he lost his income during the month when he was unable to travel to his customers' locations. The income from the business had been $1,800.00 monthly,[2] and debtor lost the business because of the loss of customers during the month in which he had no transportation. In addition, he testified that he was unable to complete his studies without his textbooks, thus losing the tuition he had already paid and leaving him with a substantial balance owing to his college. He also was hindered in the visitation of his two minor children who did not reside with him and of whom he had custody on the weekends.

---

[2] Debtor's sworn bankruptcy schedules claim that debtor's income from the operation of his cleaning business was $1,800.00 monthly, and at hearing debtor's sworn testimony was that he received at least $2,000.00 monthly from the operation of the business. As the court can see no reason that the $1,800.00 figure should have increased subsequent to the filing of the petition, it will adopt that figure as debtor's monthly income.

4

The court cannot find, from the evidence presented, that the loss of the car and the textbooks was the proximate cause of debtor's withdrawal from college. In addition, the complaint does not allege that debtor had been forced to withdraw from his classes, suggesting only that a withdrawal might be required, and no subsequent pleadings have been filed that would suggest such. To allow damages for this would unfairly prejudice defendant, who had no notice of such a claim and did not receive the required pre-trial disclosures that might have alerted it to the issue. Therefore, no damages will be awarded for debtor's alleged loss of college tuition.

The court finds that debtor's claim of loss of income was pled in the complaint, and defendant had notice of such. Defendant, however, failed to conduct any discovery on the matter or to present any evidence to contradict debtor's claim of loss of income. The schedules bear out debtor's testimony as to the amount of income lost. The court finds no prejudice or surprise to defendant in allowing debtor to testify as to the loss of income.

Debtor requests damages for the funds required to reimburse his neighbors and friends who gave him rides during the period in which he was without his vehicle. Defendant is not unduly prejudiced by the introduction of this evidence, as debtor pled in his complaint that he had been without transportation for a month. Debtor testified that he had incurred $800.00 for transportation expenses. While the court finds this amount to be somewhat high, it will allow it as it is uncontroverted.

As the court remarked at the beginning of this order, the case is troubling on many levels. First is the failure of Tri-City, the creditor, to relinquish the vehicle when requested to do so by debtor. Tri-City argues that the Fourth Circuit has stated that "[b]efore requiring a party to turn over property. . . , courts must ensure that the party's interest in the property is adequately protected." *Tidewater Finance Co. v. Moffett (In re Moffett)*, 356 F.3d 518, 521 (4th Cir. 2004). This issue generally arises in the context of a turnover motion filed by a debtor at the outset of a case to force a creditor to return property repossessed prepetition but not yet disposed of. At hearings on these motions, the courts typically condition turnover upon debtor's providing adequate protection to the creditor. However, in this case, the turnover motion was not made for over a month after the case was filed. During that month, the creditor retained the vehicle and refused to relinquish it, in violation of the automatic stay of § 362 of the Bankruptcy Code. *See id*. at 522. [3]

---

[3] In a dissenting opinion in a case addressing an issue distinct from the one before this court, Judge Klein of the Ninth Circuit Bankruptcy Appellate Panel remarked that:
> [a] three-faceted dilemma . . . arises whenever a creditor claiming lien rights has possession of property in which the estate claims an interest and wants to have turned over. The conundrum for the various parties is what to do, at what risk, and on whose initiative? Mere incantation of Bankruptcy Code §§ 362(a), 362(b), 542, and 546 often leads into circular argument that does little to move parties from finger pointing to resolution and that confirms the accuracy of Benjamin Franklin's observation that "many a long dispute may be thus

Tri-City, which held property of debtor's bankruptcy estate,[4] refused to turn over the vehicle until debtor provided an offer of adequate protection that Tri-City deemed suitable. A search of the docket in debtor's bankruptcy case reveals no request by Tri-City for any type of adequate protection of its interest in the vehicle. At trial, counsel for Tri-City argued that Tri-City had no obligation to turn over the vehicle until debtor filed its chapter 13 plan describing its intention with respect to payment for the vehicle. However, that is only one form of adequate protection. There might have been other ways in which Tri-City's rights could have been protected. The court cannot find that Tri-City acted properly by refusing to turn over the vehicle for such an extended period. Holding property of the bankruptcy estate hostage until a debtor complies with the demands of a creditor is in direct opposition to the purposes of the automatic stay. As noted in *In re Seaton*, 462 B.R. 582 (Bankr. E.D. Va. 2011):

> Upon a debtor's filing of a bankruptcy petition, the automatic stay provided by 11 U.S.C. § 362(a) operates to stay, among other things, all actions "to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under the title." 11 U.S.C. § 362(a)(6). The automatic stay also prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control

---

abridged: It is so. It is not so. It is so. It is not so." B. Franklin, Poor Richard's Alamanack 1745.

*Boggan v. Hoff Ford, Inc. (In re Boggan)*, 251 B.R. 95, 102 (B.A.P. 9th Cir. 2000).

[4] The rights debtor retained in the vehicle constituted property of his bankruptcy estate. *See Tidewater Finance Co. v. Moffett (In re Moffett)*, 356 F.3d 518, 522 (4th Cir. 2004).

> over property of the estate." 11 U.S.C. § 362(a)(3). The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized. *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988). "The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By and Through McMahon v. George Mason Bank,* 94 F.3d 130, 133 (4th Cir.1996) (citation omitted). The automatic stay provides the debtor a breathing spell from creditors, affording the debtor time to reorganize. *Grady v. A.H. Robins Co.,* 839 F.2d at 200 (quoting House Report No. 95–595, 95th Cong. 1st Sess. 340–1 (1977)). Thus, the purpose of the automatic stay is two-fold: to preserve the relative positions and rights of creditors as established by the Bankruptcy Code and to protect the debtor, individually, from collection activities.

462 B.R. at 591, quoting *In re Garner,* Case No. 09–81998, 2010 WL 890406, at *2 (Bankr. M.D.N.C. Mar. 9, 2010) (unreported decision).

The court also notes approvingly the analysis of the Ninth Circuit in *Expeditors Int'l of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.),* 210 B.R. 823 (9th Cir. BAP 1997), *aff'd in part and vacated in part on other grounds,* 165 F.3d 35 (9th Cir.1998):

> [W]hile the creditor may suggest terms of adequate protection, it may not unilaterally condition the return of the property on its own determination of adequate protection. If the creditor and the debtor cannot agree on what constitutes adequate protection, the creditor can request a hearing, with the debtor having the burden of proving that the creditor's rights will be adequately protected. If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard, it may request an emergency hearing under § 362(f). In all cases, however, any prerequisite to turnover is determined by the bankruptcy court, not by the creditor.

210 B.R. at 827-28 (internal quotations and citations omitted).

Having noted its concern with the actions of Tri-City, the court turns to the actions of debtor. Debtor did not act immediately upon discovering that Tri-City had no intent to surrender the vehicle. Neither he nor his counsel brought the matter to the attention of the court in any form. When the matter finally came before the court on March 7, 2012, damages were mounting. Debtor's counsel has requested over three thousand dollars in attorney's fees for her assistance in this case. The court finds that her services were worth considerably less. While she did finally succeed in recovering the vehicle for debtor, she did debtor no favors by waiting for over a month to file the motion for turnover. Moreover, she failed to comply with the court's pre-trial order. Therefore, the court awards only $500.00 for her services and notes that with respect to this adversary proceeding, it will not approve a request for fees in excess of that amount.

It would have been in the best interest of the parties to bring this matter before the court promptly. However, as that was not done in this case, the court finds that defendant's refusal to turn over the vehicle in light of its knowledge of debtor's bankruptcy case constitutes a willful violation of the automatic stay. *See In re Seaton*, 462 B.R. 582, 591-92 (Bankr. E.D. Va. 2011).

At the conclusion of trial, the court ruled from the bench that damages in the amount of $3,000 would be awarded plus attorney's fees of $500.

However, based upon the analysis above and a review of the record, the court has determined to reduce the award. The court awards damages as allowed by 11 U.S.C. §362(k) of $1,800.00 for loss of income for the month during which debtor was without his vehicle and $800.00 for reimbursement of expenses incurred by debtor for replacement transportation during that same period. In addition, as noted above, the court awards the sum of $500.00 for attorney's fees. Therefore,

IT IS ORDERED that judgment is entered against defendant Tri-City Auto Sales in the amount of $3,100.00, which sum includes an award of attorney's fees and costs of $500.00.

Signed: November 29, 2012

                                                    /s/ Douglas O. Tice Jr.
                                       Chief United States Bankruptcy Judge

Copies:

Timothy Neil Jones, Sr.
113 Cardinal Street
Prince George, VA 23875

Tri-City Auto Sales
316 Boulevard
Colonial Heights, VA 23834

Nnika E. White
Law Offices of White and Associates
2505 Pocoshock Place
Suite 301
Richmond, VA 23235

Kevin J. Funk
Brittany Joy Berlauk
DuretteCrump PLC
1111 East Main Street, 16th FL.
Richmond, VA 23219